# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DIANE L. R.,[1]              )
                                  )
           Plaintiff,      )
                                  )     CIVIL ACTION
v.                              )
                                  )     No. 18-2169-JWL
NANCY A. BERRYHILL,      )
Acting Commissioner of Social Security,     )
                                  )
           Defendant.     )
_____)

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.      Background

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff claims that the ALJ erred in according no weight to the medical opinions of her treating physician, Dr. Moore; posed an inadequate hypothetical question to the vocational expert (VE) and erroneously relied upon the expert's response to that question; and erred in evaluating Plaintiff's allegations of symptoms resulting from her impairments and finding them "not entirely consistent" with the record evidence. (R. 15).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the

[Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process--determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of

age, education, and work experience, she is able to perform other work in the economy.

Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the

burden is on Plaintiff to prove a disability that prevents performance of past relevant

work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter,

245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the

burden shifts to the Commissioner to show that there are jobs in the economy which are

within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court considers the issues in the order they would appear when applying the

Commissioner's sequential evaluation process. Although Plaintiff's Brief addresses the

ALJ's alleged error in evaluating Plaintiff's allegations of symptoms resulting from her

impairments after it addresses the hypothetical questioning of the VE, the ALJ's

evaluation of a claimant's allegation of symptoms is intertwined with the RFC

assessment and is more properly addressed before the issue of hypothetical questioning.

Poppa v. Astrue, 569 F.3d 1167, 1171 (10th Cir. 2009) ("the ALJ's credibility and RFC

determinations are inherently intertwined").[2]

## II.    Medical Opinions

Plaintiff acknowledges that the ALJ accorded no weight to Dr. Moore's treating

source opinion and partial weight to the opinion of Dr. Sampat, the state agency medical

---

[2] Plaintiff's Brief and the court in Poppa refer to an ALJ's evaluation of a claimant's allegation of symptoms resulting from her impairments as a "credibility determination." However, the Commissioner issued Soc. Sec. Ruling (SSR) 16-3p with an applicable date of March 28, 2016, in which she eliminated the use of the term "credibility," and clarified how she would evaluate a claimant's allegations of symptoms.   West's Soc. Sec. Reporting Serv., Rulings 736-49 (Supp. 2018) (as reissued Oct. 25, 2017).

consultant.  (Pl. Br. 11).[3]  She argues, however, that this is error because the ALJ failed to fully inquire "into Dr. Sampat's specific medical findings regarding Plaintiff's medically determinable impairment (MDI) of peripheral neuropathy," wherein Dr. Sampat found insufficient record evidence to determine the severity of Plaintiff's impairments and consequently did not assess an RFC.  Id.  She suggests that the ALJ erroneously picked and chose "among medical reports, using portions of evidence favorable to his position while ignoring other evidence."  Id. at 14-15 (quoting Carpenter v. Astrue, 537 F.3d 1264, 1265 (10th Cir. 2008)).  She argues that while an ALJ must cite record evidence supporting his decision, "he must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  Id. at 15 (quoting Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996)).

The Commissioner argues that the ALJ reasonably evaluated the medical opinion of Dr. Moore and of Dr. Sampat, and that his evaluation is supported by the record evidence.  (Comm'r Br. 9).  She argues that the ALJ did not pick and choose among the medical reports but discussed the evidence as a whole and "explained how he weighed the evidence to reach the RFC assessment."  Id.  In her Reply Brief, Plaintiff argues that because Dr. Moore is a "long time examining source," his "medical opinion is to be given particular consideration [and] is presumptively entitled to more weight than a doctor

_____

[3] In citing to Plaintiff's Brief in this opinion, the court uses the page numbering entered by Plaintiff at the bottom of each page rather that the numbering supplied by the software the court uses to read the .pdf document filed in the court's CM/ECF (Case Management/Electronic Case Filing) system.

[whose] opinion [is] limited to a review of the medical record." (Reply 2). She explains how, in her view, the record evidence supports a finding of disability. Id. at 2-5.

### A.    Standard for Evaluating Medical Opinions

For claims filed before March 17, 2017, "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources[4] that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. Id. § 404.1527(c); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2018). A physician who has treated a patient frequently over an extended period (a treating source) is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not

---

[4]The regulations define three types of "acceptable medical sources:"

"Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship. 20 C.F.R. §§ 404.1502, 416.902.

"Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship. Id.

"Nonexamining source:" an "acceptable medical source" who has not examined the claimant but provides a medical opinion. Id.

entitled to the sort of deferential treatment accorded to a treating physician's opinion."
Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)).  However, opinions
of nontreating sources are generally given more weight than the opinions of
nonexamining sources who have merely reviewed the medical record.  Robinson v.
Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463
(10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney
v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734
F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of
the nature and severity of [the claimant's] impairment(s) is well-supported by medically
acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the
other substantial evidence in [claimant's] case record, [the Commissioner] will give it
controlling weight."  20 C.F.R. § 404.1527(c)(2); see also, SSR 96-2p, West's Soc. Sec.
Reporting Serv., Rulings 111-15 (Supp. 2018) ("Giving Controlling Weight to Treating
Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating
source's medical opinion.  Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003)
(citing SSR 96-2p).  The ALJ first determines "whether the opinion is 'well-supported by
medically acceptable clinical and laboratory diagnostic techniques.'"  Id. at 1300
(quoting SSR 96-2p).  If the opinion is well-supported, the ALJ must confirm that the
opinion is also consistent with other substantial evidence in the record.  Id.  "[I]f the

opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

If the treating source opinion is not given controlling weight, the inquiry does not end. Id. A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. § 404.1527(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion. Id. 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

**B.      The ALJ's Findings**

The ALJ considered the opinion of the state agency medical consultant, Dr. Sampat, noted that Dr. Sampat found Plaintiff's neuropathy non-severe within the

meaning of the Act and regulations, and accorded that opinion partial weight. (R. 16-17). He credited Dr. Sampat's opinion because he is an expert in assessing impairments pursuant to the Act and regulations, he based his opinion on the record and supported the opinion with "a detailed narrative explaining what evidence he relied upon in reaching his conclusions," and his opinion was "consistent with the physical examinations, which do not reflect any significant functional deficits." Id. at 16. However, he found "the EMG studies showing mild sensory neuropathy support a limitation to light work," and accorded the opinion only partial weight. Id. at 17.

He recognized that Dr. Moore was Plaintiff's primary treating physician but accorded his opinion no weight. Id. He explained that he did so because Dr. Moore's "opinions are not well supported by the medical evidence of record, … his own treatment notes do not document any clinical signs or findings reasonably consistent with his conclusions, … [he] did not provide any explanation or references to medical signs or findings of record to support his conclusions," and "his opinions are presented without any narrative discussion of the basis for each limitation, except for a reference to the EMG studies, which showed only mild neuropathy." (R. 17).

## C.    Analysis

Plaintiff's argument that the ALJ failed to fully inquire "into Dr. Sampat's specific medical findings regarding Plaintiff's medically determinable impairment (MDI) of peripheral neuropathy" because Dr. Sampat found insufficient record evidence to determine the severity of Plaintiff's impairments and did not assess an RFC, is without merit. The record reveals that Dr. Sampat found "MDIs" of "[c]olon polyps" and

"Peripheral Neuropathy," both of which he determined were "non-severe." (R. 62). As the ALJ noted, Dr. Sampat is an expert in evaluating impairments pursuant to the Act and the regulations, so his further statement that "[t]here is insufficient evidence to determine severity of these MDI at time of DLI [(Date Last Insured)]" must be viewed in light of these clear findings and of his expertise. Id. As the regulations make clear, finding an MDI "non-severe" is a term of art meaning that the impairment does not significantly limit (does not have more than a minimal effect on) the claimant's mental or physical ability to do basic work activities such as walking, standing, sitting, carrying, understanding simple instructions, responding appropriately to usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521; see also, Williams, 844 F.2d at 751 (to show an impairment is severe, Plaintiff need only show that it would have more than a minimal effect on her ability to do basic work activities). In context, Dr. Sampat's findings together must be understood to mean that at step two of the sequential evaluation process he found Plaintiff's impairments do not have more than a minimal effect on her ability to perform basic work activities (they are non-severe). However, when considering Plaintiff's RFC between steps three and four of the process, Dr. Sampat found that there was insufficient evidence to opine regarding the precise functional limitations caused by the impairments at Plaintiff's date last insured ("There is insufficient evidence to determine severity of these MDI at time of DLI.").

The fact that Dr. Sampat felt he could not opine regarding precise functional limitations existing at Plaintiff's date last insured does not require the ALJ to further inquire regarding Dr. Sampat's opinion, because an ALJ does not require a medical

opinion which agrees with each functional limitation he assesses in a particular case. "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012) (citing Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004)); Wall, 561 F.3d at 1068-69). The final responsibility for determining RFC rests with the Commissioner. 20 C.F.R. §§ 404.1527(e)(2), 404.1546. Although an ALJ is not an acceptable medical source qualified to render a medical opinion, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." Howard, 379 F.3d at 949. "And the ALJ's RFC assessment is an administrative, rather than a medical determination." McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) (citing SSR 96-5p, 1996 WL 374183, at *5 (July 1996)). Because an RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ." Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at **2 (10th Cir. Aug. 26, 1999); 20 C.F.R. § 404.1545(a).

As noted above, the ALJ provided four reasons to reject Dr. Moore's opinion, the court finds that those reasons are supported by the record evidence, and Plaintiff does not even address them. Her argument is that Dr. Moore is a treating source[5] and as such his "opinion is to be given particular consideration [and] is presumptively entitled to more weight than a doctor [whose] opinion [is] limited to a review of the medical record."

---

[5] Plaintiff calls him a "long time examining source" (Reply 2), but the ALJ acknowledged him as a treating source and the clear import of Plaintiff's argument is that his opinion was worthy of greater deference as a treating source opinion.

(Reply 2).  As Plaintiff suggests, a treating source opinion is worthy of deference and is generally afforded greater weight than that of a non-examining source.  However, the ALJ acknowledged that Dr. Moore is a treating source and gave specific, legitimate reasons to reject his opinion.  More is not required.  <u>Watkins</u>, 350 F.3d at 1301.

## III.    Evaluation of Plaintiff's Allegations of Symptoms

Plaintiff claims the ALJ erred in finding that her allegations of symptoms are not consistence with the record evidence.  The Commissioner argues that the ALJ correctly found that Plaintiff's allegations of symptoms were inconsistent with the record evidence.  In her Reply Brief, Plaintiff again argues that the record evidence supports a finding of disability.

### A.    Standard for Evaluating a Claimant's Allegations of Symptoms

The Tenth Circuit has explained the analysis for considering subjective testimony regarding symptoms.  <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability.  Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain.  This court has stated:  The framework for the proper analysis of Claimant's evidence of pain is set out in <u>Luna v. Bowen</u>, 834 F.2d 161 (10th Cir. 1987).  We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488(citations and quotation omitted).

In evaluating a claimant's allegation of symptoms, the court has recognized a non-exhaustive list of factors which should be considered. Luna, 834 F.2d at 165-66; see also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3. These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).[6]

The Commissioner promulgated regulations suggesting relevant factors to be considered in evaluating a claimant's allegation of symptoms which overlap and expand upon the factors stated by the court: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors

---

[6] Luna, Thompson, and Kepler, were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination." Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5871 (Jan. 18, 2017) (codified at 20 C.F.R. § 404.1529). Therefore, the three-step framework set out in Luna, based on 20 C.F.R. § 404.1529 (2017) is still the proper standard to be used as explained in the regulations in effect on June 14, 2017, when this case was decided.

concerning limitations or restrictions resulting from symptoms. 20 C.F.R.

§ 404.1529(c)(3)(i-vii).

### A. The ALJ's Findings Regarding Plaintiff's Allegations of Symptoms

The court here quotes in its entirety, the ALJ's evaluation of Plaintiff's allegation

of symptoms resulting from her impairments:

> In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.
>
> The claimant alleges disability due to a history of rectal colon resection and terminal ileum and cecum removal, with sensory neuropathy in her legs and feet. She testified that she was diagnosed with colon cancer in 2009, and had surgery to remove 18 inches of her colon, followed by chemotherapy. She testified that since that time, she has had residual symptoms of weakness, exhaustion, and neuropathy, which began in March 2010. She testified that she had another surgery to remove recurrent polyps in September 2013, which also included a colon resection. She testified that following that procedure she developed chronic diarrhea, and that she has a bowel movement at least 10 times per day. She testified that her conditions cause pain in her knees, legs, and groin area, as well as her feet. She testified that she can only sit for about 15 minutes at a time, before she has to raise her legs to take pressure off them. She testified that she can only stand for about 10 minutes or walk for about 30 minutes at a time.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

Turning to the medical evidence, the objective findings in this case do not fully support the claimant's allegations of disabling limitations prior to September 30, 2014. As she testified, the record reflects that the claimant was diagnosed with colon cancer in 2009, and her treatment involved chemotherapy and partial resection of the colon. Also consistent with her testimony, treatment records reflect that the claimant developed neuropathy due to the chemotherapy. However, [(1)] in contrast to her allegations of constant, debilitating pain, repeat EMG studies showed only mild sensory neuropathy. Meanwhile, [(2)] the claimant has not presented with any chronic motor, sensory, strength, or reflex deficits reasonably consistent with her allegations. Despite her alleged inability to stand, walk, or sit for more than a short periods [sic], [(3)] physical examinations have essentially been unremarkable except for some diminished vibratory sensation in the toes, and the claimant has shown good strength, a normal gait, and normal sensation to light touch and pinprick. Thus, while the claimant may indeed have some neuropathic pain, the extreme limitations she alleges are out of proportion with the mild EMG findings and the normal physical examinations. Moreover, although the claimant did undergo a cecal resection in December 2014 for recurrent adenoma, [(4)] treatment records before and after this procedure consistently note that the claimant was looking and feeling well.

The claimant's allegations of recurrent diarrhea and bowel movements at least ten times per day [(5)] are also not documented in the treatment records. While there are a few notes regarding acute episodes of diarrhea, these episodes are not noted to be a chronic problem or to have occurred with such frequency as to reasonably interfere with the claimant's ability to engage in basic work activities within a regular break schedule.

In addition to the lack of objective support for her allegations, the claimant also reports [(6)] activities that are not limited to the extent one would expect in light of her allegations of disabling physical limitations. For example, although she alleges that she takes frequent breaks and has to sit to get dressed, the claimant admits the ability to independently perform personal care tasks such as bathing, dressing, personal hygiene, feeding and toileting. She is able to perform routine household chores, such as cooking,

cleaning, and laundry. She drives, shops, reads, watches television, and gardens. She meets with friends for lunch and plays Bunco every three months. In summary, the claimant's descriptions of her daily activities are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations that preclude her from work activities. While the claimant's ability to engage in these ordinary daily activities is not itself conclusive proof that the claimant was also able to engage in substantial gainful activity, the claimant's capacity to perform these tasks independently is a strong indication that the claimant retains the capacity to perform the requisite physical and mental tasks that are part of everyday basic work activity. That indication is further supported by the objective medical signs and findings discussed above. All of these factors, considered together, demonstrate the claimant's ability to engage in full-time, competitive work within the parameters of the above residual functional capacity.

(R. 15-16) (citations to the record omitted) (numbering added to highlight inconsistencies relied upon by the ALJ).

**B.      Analysis**

The portion of the decision quoted above demonstrates that the ALJ applied the correct legal standard to evaluate Plaintiff's allegations of symptoms. Moreover, the court's review of the inconsistencies relied upon by the ALJ reveals that they are supported by the record evidence. Plaintiff does not really allege error in the inconsistencies relied upon by the ALJ, but she appeals to Plaintiff's contrary testimony and to Dr. Moore's opinion regarding disability and argues that the ALJ just got it wrong. The court finds no error in the ALJ's evaluation of Plaintiff's allegations of symptoms.

**IV.    Hypothetical Questioning**

Plaintiff's argument regarding erroneous hypothetical questioning of the VE relies upon the medical opinion of Dr. Moore and upon the testimony of Plaintiff regarding her symptoms. The hypothetical presented to a VE must include all limitations found by the

ALJ but need not include all limitations alleged by Plaintiff. <u>Barnett v. Apfel</u>, 231 F.3d 687, 690 (10th Cir. 2000). The ALJ need only include limitations which he finds supported by substantial evidence in the record. <u>Davis v. Apfel</u>, 40 F. Supp. 2d 1261, 1269 (D. Kan. 1999). This is a necessary corollary to the rule that "'[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision.'" <u>Gay v. Sullivan</u>, 986 F.2d 1336, 1340 (10th Cir. 1993) (citing <u>Hargis v. Sullivan</u>, 945 F.2d 1482, 1492 (10th Cir. 1991) (quoting <u>Ekeland v. Bowen</u>, 899 F.2d 719, 722 (8th Cir. 1990))). Because the court finds no error in the ALJ's rejection of Dr. Moore's opinion or in his findings of inconsistencies in Plaintiff's allegations of symptoms, it finds no basis to find error in the hypothetical questioning or reliance on the VE testimony.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated March 25, 2019, at Kansas City, Kansas.


<u>s:/ John W. Lungstrum</u>
**John W. Lungstrum**
**United States District Judge**